LOWELL THOMAS ET AL. *v.* ALLEGANY COUNTY
BOARD OF EDUCATION ET AL.

[No. 656, September Term, 1981.]

*Decided April 7, 1982.*

The cause was argued before THOMPSON, ▮COUCH and WEANT, JJ.

*Robert H. Reinhart,* with whom was *Robert A. Destro* on the brief, for appellants.

*Armand M. Pannone,* Jr., for appellees.

THOMPSON, J., delivered the opinion of the Court.

The appellants, academically qualified students in private schools, contend that as residents of Allegany County they

are entitled to participate in any program or instructional classes offered by the Allegany County Board of Education, appellee.[1] The trial judge, James S. Getty, sitting in the Circuit Court for Allegany County, rejected their contention and so do we.

Since 1976 the Board has funded an All-County Music Program, which encompasses elementary, junior and high school bands, choral and orchestral programs. The portion of the program at issue is the All-County High School Band which, after allowing both public and private school participation in 1978 and 1979, limited its participants in 1980 to those enrolled in the Allegany County Public School System. Members of the band are chosen after being auditioned, in preparation for which each student prepares his selection of music. They perform individually before music professors from neighboring universities who are paid by the Board. The professors analyze each student's performance, suggest techniques for improvement and ultimately rate the student on a scale from 1 to 6. A list of students is then compiled for each instrument and the band directors and music teachers of schools in the county select students with the highest ratings for participation in the band that year. Academic credit is given for participation. Students who participate in the competition are said to enjoy a number of benefits, including the experience of performing under pressure and in a competitive atmosphere, enhanced resume value by citing involvement in the band, and finally, exposure to individuals who can provide information as to college level music programs. At the time of trial, all appellants were enrolled in a parochial school, and would have been eligible to audition for the All-County Music Program had they been full-time students in the public school system. Three of the students participated in the 1981 auditions for the band pursuant to the trial court's preliminary order, received the highest rating in the competition, and would have been seated as members of the band if the prior policies had been

---

1. Although the students' parents are also appellants we shall for simplicity refer only to the students. Although there are other appellees we shall refer only to the Board of Education.

continued. They had participated in the program during the time they attended public elementary school and in 1978 and 1979 when the program was open to private school students. Testimony of each of the three students indicated his desire to participate in the All-County Band, but each emphasized that he had originally enrolled in the Bishop Walsh High School because of its superior academic program and that he did not intend to transfer to the public school system to participate in the band.

Of the eleven high schools in Allegany County, two are private schools. One is Bishop Walsh High School, a Catholic school in Cumberland, and the other is Calvary Christian Academy, a protestant school in Cresaptown. The appellants in this action attend Bishop Walsh High School. In recent years, the music curriculum of that school has expanded to include private music lessons, music classes and a jazz ensemble. In 1977 a marching band was formed. Each of the students participates in one or more of these programs.

The only exception to the School Board's practice of excluding private school students from educational programs offered on the premises of the public schools is with respect to vocational education. Dr. Wayne Hill, Superintendent of Schools, testified that in the case of vocational training, equal opportunity for students who attend private schools is required by the Federal Government as long as satisfactory schedules can be established between the private and public school. See, 20 U.S.C. §§ 2332, 2401 (b) 2.

## I Free Exercise of Religion

The appellants assert that the appellee's refusal to permit the students at Bishop Walsh High School to participate in the All County Music Program violates their rights under the free exercise clause guaranteed by the First Amendment of the Constitution of the United States. More specifically, they contend that the Board, having decided to offer the music program to public school students, must extend the benefits of such program to private school students as well.

Although parents have a constitutionally protected right to direct the religious training of their children, including their education in religious-affiliated schools, *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S. Ct. 571, 69 L.Ed. 1070 (1925), this right to attend parochial school does not in our view necessarily establish a concomitant right for these children to remain eligible for participation in public school programs.

The free exercise clause bars "governmental regulation of religious beliefs as such, or interference with the dissemination of religious ideas." *Gillette v. United States,* 401 U.S. 437, 91 S.Ct. 828, 28 L. Ed. 2d 168 (1971). To meet the constitutional mandates established by the free exercise clause, the application of a rule either (1) must not interfere with, burden, or deny the free exercise of a legitimate religious belief or (2) must be justified by a state interest of sufficient magnitude to override the interest claiming protection under the free exercise clause. *Wisconsin v. Yoder, supra,* 406 U.S. at 214. The decision to confine participation in the All-County Band to public school students does not infringe upon the private school students' freedom of religion. The rule neither prohibits a parent from enrolling the child in a private school, nor deters the students from following the practices of their faith. The rule merely prevents a child from reaping the benefits of a public school activity once the constitutional right to a private school education is exercised. The impact of the rule on freedom of religion is minimal. As we have stated each of the appellants testified that he chose to attend Bishop Walsh in view of its superior academic program. Further, each indicated that he did not intend to transfer to the public school system merely to become eligible to participate in the All-County Band.

On the other side of the scale, it appears that the Board has a legitimate interest in confining public school programs to public students. Although the administrative impact of a decision mandating the participation of the private students into this public school program appears to us to be trivial, the precedent as it affects the broader spectrum of school admin-

istration is of a far more deleterious nature. With the opening of such "Pandora's box", there would be no device to preclude, for example, a private school having difficulty securing a qualified chemistry teacher from unilaterally deciding to transport the entire student body to a nearby public school for their chemistry education. The potential for administrative disruption is obvious. Thus, while we may agree that little if any administrative hardship would inure to the Board in permitting these three students to partici-pate in the All-County Band, it is not for this Court to hold that the Board *must* admit them, in view of the broader implications involved. We think the school administrators and not courts, should decide how much administrative disruption is too much. *See Adams v. County Commissioners*, 180 Md. 550, 26 A.2d 377 (1942).

## II Equal Protection

The appellants further allege that the Board's rule violates the equal protection guarantees of the State and Federal Constitutions. The right allegedly infringed is that of private school students to be treated similarly to public school students with respect to participation in extra-curricular public school programs.[2]

Generally, where private schools have been excluded from participation in public school extra-curricular activities, courts have applied a rational relationship test to determine whether the private school students' constitutional rights have been infringed upon. *See Denis J. O'Connell High School v. Virginia High School*, 581 F.2d 81 (1978), *Valencia v. Blue Hen Conference*, 476 F. Supp. 809 (1979). The appel-lants urge, however, that inasmuch as the only private schools affected by the Board decision are religious oriented schools, this ruling should be reviewed under a compelling

---

2. The Court of Appeals has construed Maryland Declaration of Rights Article 24 as equal to the federal requirement. We shall continue the dis-cussion of the federal cases and consider that the Maryland case would so follow. *See,* Board of Supervisors of Elections v. Goodsell, 284 Md. 279, 396 A.2d 1033-1044 n.7 (1979).

state interest test. In the preceding section, this Court concluded that the compelling state interest test was met in view of the *de minimi* burden on the apellant's freedom of religion and the legitimate interest in avoiding administrative inefficiency. Such analysis is similarly applicable to appellants' equal protection claims.

## III Freedom of Educational Choice

Appellants assert that the Board's policy unconstitutionally burdened their Fourteenth Amendment right to freedom of educational choice, by excluding only those students who chose to attend a religiously-affiliated school. The precise question as it pertains to curriculum seems to have been presented in only one case, *Cook v. Griffin,* 364 N.Y.S. 2d 632, 47 AD 2d 23 (1975), in which the Supreme Court of New York held that the state was not required to make field trips on school buses available to non-public school students. In so holding the Court observed:

"While there is no question that parents clearly have the right to send their children to non-public schools (*Pierce v. Society of Sisters,* 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070), There is no corresponding right to equal aid or even to any aid at all in the absence of specific legislative authorization (*Norwood v. Harrison,* 413 U.S. 455, 93 S. Ct. 2804, 37 L.Ed.2d 723; *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16; *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745). All children, regardless of religious affiliation or economic status in life, have an equal opportunity to attend public schools. The fact that a child, or his parent on his behalf, elects to forego that opportunity deprives him of nothing by state action (*Brusca v. Missouri, supra*)." Id. at 637.

We agree with the rationale of the New York court that parents and children had a constitutional right to choose where they would receive their education, the choice has been exercised, and now they cannot be heard to complain.

## IV Waiver

The appellants maintain that the trial court erred in its determination that they had effectively waived their right to participate in public education programs once they exercised their choice to receive a private school education. In urging the absence of waiver, appellants rely on the criminal standards as set forth in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979). In *Fuentes v. Shevin,* 407 U.S. 67, 94-95, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the court indicated that the criminal rules of waiver are not appropriate in a civil case. The question is of no import in the instant case, however, in view of the implicit knowledge of each of the children and his parents that he would no longer be considered a part of the public school system. Further, these students were cognizant at all times that they could re-enter the public school system if they so desired; a choice each of the students acknowledged he had no intention of exercising.

## V Statutory Rights

The right of Maryland students to a free public school education is protected by a state statute passed in accordance with the Constitution of Maryland. Section 1 of Article VIII of the Maryland Constitution provides: "The General Assembly shall . . . by Law establish throughout the State a thorough and efficient System of Free Public Schools. . . ." This mandate was implemented in Maryland Education Code Ann. § 7-101 (a) which provides that "all individuals who are 5 years old or older and under 21 shall be admitted free of charge to the public schools of this State."

Thus, in Maryland, the entitlement to education is protected by the due process clause of the Fourteenth Amendment as a property interest. Appellants contend that inasmuch as the students here involved are residents of Allegany County and are within the age limits specified in § 7-101 (a), they are entitled not merely to be admitted to the public schools of this state, but to any part or portion of the public school system which they choose. We cannot adopt such a strained construction. In Maryland Education Code Ann. § 4-107, the Board of Education is authorized to:

> "(2) Maintain throughout its county a reasonably uniform system of public schools that is designed to provide quality education and equal educational opportunity for all children;
>
> (3) Subject to this article and to the applicable by-laws, rules, and regulations of the State Board, determine, with the advice of the county superintendent, the educational policies of the county school system; and"

Once again, appellants' argument must fail in view of the unreasonable burden such construction would place on the efficient administration of the public school system. If the legislature or the school board wishes to permit parochial students to attend selected classes or programs, we see no impediment, *Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), *Adams v. County Commissioners, supra,* but we do not think it is for any court to mandate such admission under a strained interpretation˙ of the aforementioned statute.

*Decree affirmed.*
*Appellants to pay the costs.*