Annie SWANSON, a minor child by and through her parents and next friends, Dennis SWANSON and Lucy Swanson, Plaintiffs,

v.

GUTHRIE INDEPENDENT SCHOOL DISTRICT NO. I–1; Melvin Scheihing, President; Karl Kinney, 1st Vice President; Rick Davis, 2nd Vice President; Hugh Plagg, Member; Evans Fowler, Member; Robert Hudson, Member; Janna Pierson, Member; Don Bowman, Superintendent; J.E. Haney, Principal, Defendants.

No. CIV–95–596–M.

United States District Court, W.D. Oklahoma.

Sept. 30, 1996.

Todd A. McKinnis, The McAlister Law Firm, Edmond, OK, A. Daniel Woska, Conner L. Helms, Woska Hasbrook Underwood Dowd & Helms, Oklahoma City, OK, V. Glenn Coffee, II, Oklahoma City, OK, Kelly Shackleford, Dallas, TX, for Dennis Swanson, Lucy Swanson, parents and next friend of Annie Swanson.

Frederick J. Hegenbart, Jerry A. Richardson, Rosenstein Fist & Ringold, Tulsa, OK, for Guthrie Independent School District No. I–1, Melvin Scheihing, Karl Kinney, Rick Davis, Hugh Plagg, Evans G. Fowler, Robert Hudson, Janna Pierson, Don Bowman, J.E. Haney.

## *ORDER*

MILES–LaGRANGE, District Judge.

Before the Court are the following motions:

1) Defendants' Motion to Dismiss filed on June 2, 1995. Plaintiffs responded in opposition on July 6, 1995. Both parties submitted evidentiary materials outside the pleadings which have been considered by the Court. Accordingly, the Court must treat defendants' motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b);

2) Plaintiffs' Motion for Summary Judgment filed on July 6, 1995. Defendants responded in opposition on August 7, 1995; and

3) Motion for Summary Judgment of Defendants Scheihing, Kinney, Davis, Plagg, Fowler, Hudson, Pierson, Bowman, and Haney (collectively known as "Individual Defendants") Based On Qualified Immunity. Plaintiffs responded in opposition on September 6, 1995.

Because all three motions concern the same issues, the Court will address all three in this Order. Based upon the parties' briefs and evidentiary submissions, the Court makes its determination.

The following are the undisputed facts in this case. Plaintiff Annie Swanson ("Annie"), a minor child, is home schooled by her parents, Plaintiffs Dennis Swanson and Lucy Swanson (the "Swansons" or collectively "Plaintiffs"). During the second semester of the 1993–1994 school year, then Superintendent of the Guthrie School District, Dr. Jeff Maddox, permitted Annie to enroll in two one hour 7th grade classes at Guthrie Junior High School. Annie was also permitted to pre-enroll in several 8th grade classes for the 1994–1995 school year. It is undisputed that Dr. Maddox acted without consulting or informing the Guthrie School District Board of Education ("Board"). Before school started for the fall 1994 semester, the Swansons were informed by the new Superintendent, Don Bowman, that they would have to take their request for Annie to attend classes on a part-time basis to the Board.

On August 23, 1994, the Swansons presented their request to the Board at a special meeting. The Board voted to table until the September 12, 1994 regular meeting, any action regarding a policy on whether or not to allow private school and home schooled students to attend schools in the Guthrie School District on a part-time basis by enrolling in select classes. The Board also voted that Annie must enroll as a full-time student if she wished to attend Guthrie Junior High School before a policy was in place. On September 12, 1994, the Board adopted a policy that required all students enrolling in Guthrie Public Schools to do so on a full-time basis. On October 17, 1994, upon a request by the Swansons for reconsideration, the Board scheduled a special meeting to allow the Swansons' attorneys to address the Board and submit additional materials in support of their position. After the hearing and after a meeting in executive session, the Board again voted to adopt the policy as previously approved on September 12, 1994 with the following provision added: "In the event the State Department of Education advises us that part-time students can be counted for state aid purposes, the Board will reconsider this policy."

It is further undisputed that the Oklahoma State Department of Education is the agency of the State of Oklahoma charged with supervising and administering the public school system in Oklahoma. The State Department of Education calculates state aid available to each public school district, which is based on the number of students enrolled at each district. State Department of Education regulations provide that part-time students may not be counted for purposes of calculating state aid.

The Plaintiffs filed this action seeking to compel the Guthrie School District to allow Annie to attend classes as a part-time student. Plaintiffs seek to enroll Annie in several selected courses and provide the remainder of her education through home schooling. Plaintiffs allege the Board's denial of their request violates several of their state and federal constitutional rights. Plaintiffs' complaint sets forth five causes of action:

1) A violation of their constitutional right to attend public schools and to a free public education;

2) A violation of their constitutional right to direct the upbringing and education of their child;

3) A violation of their constitutional right to free exercise of religion provided by the First Amendment;

4) A violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq.[1]; and

5) A violation of the Oklahoma Governmental Tort Claims Act (a state claim). Plaintiffs also requested injunctive relief.[2]

## DEFENDANTS' MOTION TO DISMISS CONVERTED TO A MOTION FOR SUMMARY JUDGMENT

Defendants deny any violation of Plaintiffs' constitutional rights and seek judgment as a matter of law on all of Plaintiffs' claims.

### A. Right to Attend Public Schools and to a Free Public Education

■ Plaintiffs allege defendants' action in denying Annie the right to attend Guthrie Junior High School on a part-time basis has deprived Annie of her right to a free public education. By requiring Annie to attend public school full time, Plaintiffs argue, defendants are forcing Plaintiffs to compromise their religious beliefs and parental right to direct Annie's education and are "thereby denying her the fundamental right to a free public education and all of the profound interactive experiences this would provide for Annie." See Plaintiffs' Response to Defendants' Motion to Dismiss and Motion for Summary Judgment ("Plaintiffs' Response Brief") at 21–22 (July 6, 1995).

Defendants contend Plaintiffs are in actuality asserting they have been deprived of a property interest in public education without due process of law. While defendants do not disagree with Plaintiffs that Oklahoma law vests Annie with a property interest in free public education, defendants contend Plaintiffs do not possess a property interest in a free **part-time** public education. Furthermore, defendants argue, even assuming Dr.

Maddox's actions created a property interest in a part-time education, Plaintiffs received all the process that was due because they had the opportunity to be heard by the Board at a meaningful time and in a meaningful manner before any action was taken with regard to Annie's attendance as a part-time student.

It is well settled law that property interests are not created by the Constitution but must be defined by an independent source such as state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Both parties agree the Oklahoma Constitution defines Annie's right to a free public education. Article 1, Section 5 of the Oklahoma Constitution states: "Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all of the children of the state and free from sectarian control...." Article XIII, Section 1 of the Oklahoma Constitution also provides: "The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated."

There is likewise no dispute that Annie's parents have a state constitutional right to home school their daughter. Article XIII, section 4 of the Oklahoma Constitution states: "The Legislature shall provide for the compulsory attendance at some public or other school, unless other means of education are provided...." Furthermore, the Oklahoma courts have clearly found that home schooling satisfies the "other means of education" requirement. *Wright v. State*, 21 Okla.Crim. 430, 209 P. 179 (App.1922). The Oklahoma Court of Criminal Appeals also noted the "other means of education" must be provided in good faith and "equivalent to those afforded by the state" and these issues were questions of law, not of fact. *Id.*, 209 P. at 180–81. *See also* Op.Atty.Gen. 73–129 (compulsory attendance law is satisfied as long as private instruction is provided in

---

**1.** On September 26, 1995, Plaintiffs amended their complaint to add a cause of action under this statute.

**2.** Plaintiffs filed a motion for preliminary injunction. A hearing was held on the motion on June 6, 1995. On June 8, 1995, this Court denied Plaintiffs' motion for a preliminary injunction.

good faith and is equivalent in fact to that afforded by the State).

The Court therefore agrees with defendants' conclusion that home schooling is considered an alternative education option. The Court further agrees that Plaintiffs seek to "judicially abrogate the *equivalency* requirement for home schooling and replace it with an absolute right to use the public schools to supplement the home school education." *See* Brief of Defendants in Response to Motion for Preliminary Injunction and in Support of Motion to Dismiss ("Defendants' Response Brief") at 9 (June 2, 1995). This the Court will not do.

■ Plaintiffs have failed to provide any evidence that defendants have deprived Annie of her right to a free public education. Annie has always been and continues to be entitled to a free public education. Nor have Plaintiffs provided any support for their contention that they may "pick and choose" what courses Annie will take in the public schools. Oklahoma law is clear that the local boards of education have the power to "[m]aintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school district." Okla.Stat.Ann.tit. 70 § 5–117(A)(3) (West.Supp.1995–96). The Oklahoma Legislature has also vested the State Board of Education with the authority to determine curricular standards for public schools. *See* Okla.Stat.Ann.tit. 70 § 11–103.6 (West Supp.1995–96) ("By February 1, 1991, the State Board of Education shall adopt curricular standards for instruction of students in the public schools of this state that are to be implemented not later than the 1993–94 school year."). In light of existing Oklahoma law, the Court finds Plaintiffs' reliance on *School Board, District No. 18 of Garvin County v. Thompson,* 24 Okla. 1, 103 P. 578 (1909) is misplaced.[3] The Court also declines to adopt Plaintiffs' strained interpretation of Oklahoma law to create a right to a free **part-time** public education.

■ Furthermore, as defendants correctly argue, even if Plaintiffs could show an entitlement to a free part-time education, Plaintiffs received all the due process that was required. *See Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (Due Process clause only protects against deprivations of property interests without due process). Plaintiffs were afforded a hearing at a special meeting of the Board on August 23, 1994. On October 17, 1994, Plaintiffs were afforded a second hearing at which their attorneys addressed the Board and submitted materials in support of their request. Defendants are entitled to summary judgment on Plaintiffs' claim.

## B. *Right of Parental Control*

■ Plaintiffs next allege their right to direct the upbringing and education of Annie has been violated by defendants' refusal to enroll Annie part-time. This substantive right founded in the Fifth and Fourteenth Amendments' Due Process Clauses has been infringed, Plaintiffs' argue, because Plaintiffs have a "fundamental right to direct Annie's education, to provide her with a well balanced education consisting, in part, of part time attendance at the public school." *See* Plaintiffs' Response Brief at 32. However, this Court has already ruled Plaintiffs' have no entitlement to a free part-time public education. Furthermore, Plaintiffs' right to direct Annie's education is not absolute. Nothing in the Constitution, federal or state, grants Plaintiffs the right to control public education on an individual basis. *See e.g., Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968) (public education in our Nation is committed to the control of state and local authorities). While Plaintiffs' certainly have the right to direct Annie's education by home schooling her, nothing defendants have done infringes that right. Plaintiffs parental control over Annie's education simply has not been infringed

---

**3.** Plaintiffs rely on *Thompson* in support of their argument they have a right to control Annie's education and therefore decide which courses she should take. The *Thompson* case involved a parent's choice to withdraw his children from singing lessons required by the school. While the Oklahoma Supreme Court upheld the parent's right to make that choice, the Court did not hold students in public schools could attend on a part-time basis.

**516**

by the Board's policy of full-time attendance in Guthrie public schools.[4]

### C. *Free Exercise of Religion*

■ Plaintiffs also contend defendants' actions have violated their First Amendment right to free exercise of religion. Plaintiffs contend their "personally-held religious beliefs [ ] dictate greater parental control and direction over Annie's education." *See* Plaintiffs' Response Brief at 28. Furthermore, Plaintiffs argue, defendants' policy of full time attendance at public schools without a compelling state interest constitutes a substantial burden on Plaintiffs' free exercise of their religious beliefs. Finally, Plaintiffs assert, defendants' denial of Annie's part-time request can only be upheld if it is the least restrictive alternative.

In response, defendants argue Plaintiffs have no free exercise right to send Annie to public school on a part-time basis nor to have her home schooling education supplemented by the public schools. As a matter of fact, defendants argue, Plaintiffs admitted "their religious convictions compel them to educate their child at home by using Christian educational tools and providing her spiritual, emotional, ethical and academic education." *See* Plaintiffs' Response Brief at 20. Defendants argue they have done nothing to interfere with Plaintiffs' religious choice to home school Annie, "nor have they done anything that in any way prevents the Plaintiffs from following the dictates of their faith." *See* Defendants' Response Brief at 21. The Court agrees with defendants.

■ A governmental rule challenged under the First Amendment's free exercise clause either must not deny the free exercise of religious belief, or the state's interest must be of sufficient magnitude to override the individual's free exercise interest. *Wisconsin v. Yoder*, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). Plaintiffs have admitted their religious belief compels them to home school Annie rather than send her to public school. On the other hand, Plaintiffs also argue since their religious beliefs do not prohibit some public school attendance, de-

fendants must allow Annie to attend public school part-time. This argument, however, does not establish how Plaintiffs' religious belief has been substantially burdened by the defendants.

■ Furthermore, free exercise claims must be rooted in religious beliefs to be protected under the First Amendment. *See Yoder*, 406 U.S. at 215, 92 S.Ct. at 1533. Plaintiffs have never claimed their religious beliefs require Annie attend school on a part time basis but in fact admit just the opposite. Relying on *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), Plaintiffs also argue having to make a choice between home schooling and full time public school attendance violates their free exercise rights. In *Sherbert v. Verner* the United States Supreme Court held the state of South Carolina could not constitutionally deny or place conditions on Ms. Sherbert's right to receive unemployment benefits when she refused to work on Saturdays because it violated her religious beliefs. The Court stated "[T]o condition the availability of benefits upon this appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties." *Id.* at 406, 83 S.Ct. at 1795.

Plaintiffs in the instant case, however, have not been denied any benefit, for Annie's right to a free public education has never been withheld from her. Furthermore, Plaintiffs have failed to show how the defendants' requirement that Annie attend school full time violates any cardinal principle of their religious faith. While the Plaintiffs have stated their religion compels them to home school Annie, they have also stated "It is not the Plaintiffs' religious beliefs which compel them to send Annie to part-time school." *See* Plaintiffs' Response Brief at 20. Defendants actions do not violate the principles announced in *Sherbert.*

As the Sixth Circuit Court of Appeals recognized it is "governmental compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to

---

**4.** Plaintiffs argue defendants' abridgement of their right of parental control should be subject to "strict scrutiny." As this Court has already

found Plaintiffs' right of parental control has not been violated, the Court need not address Plaintiffs' standard of review argument.

affirm or disavow a belief forbidden or required by one's religion, [that] is the evil prohibited by the Free Exercise Clause." *Mozert v. Hawkins County Board of Education,* 827 F.2d 1058, 1066 (6th Cir.1987). That is not the situation before this Court. The Court finds Plaintiffs' rights to the free exercise of religion have not been violated and defendants are entitled to judgment as a matter of law on Plaintiffs' First Amendment claim.

### D. *Religious Freedom Restoration Act*

■ Plaintiffs amended their complaint to add a claim under RFRA. The RFRA provides that "[g]overnment shall not substantially burden a person's exercise of religion if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." 42 U.S.C. § 2000bb–1(a). Subsection (b) provides that:

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1(b).

In a recent case, the Tenth Circuit Court of Appeals defined the threshold requirements of a prima facie free exercise claim under RFRA. Plaintiffs must be able to establish, by a preponderance of the evidence, that the governmental action complained of (1) substantially burdens, (2) a religious belief rather than a philosophy or way of life, (3) which belief is sincerely held by the Plaintiffs. *United States v. David Meyers,* 95 F.3d 1475, 1486 (10th Cir.1996) (citing *Thiry v. Carlson,* 78 F.3d 1491, 1494 (10th Cir.1996)). Only after Plaintiffs establish these threshold requirements does the burden shift "to the government to demonstrate that the challenged regulation furthers a compelling state interest in the least restrictive manner." *Id.* (citation omitted).

In *Werner v. McCotter,* the Tenth Circuit Court also stated:

> Constraints upon religious conduct will not fall within the ambit of the Act unless a "substantial burden" is placed upon a prisoner's capacity to exercise or express his or her sincerely held religious beliefs or faith. To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs ...; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion....

*Werner v. McCotter,* 49 F.3d 1476, 1480 (10th Cir.1995), *cert. denied* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995) (citations omitted). Other courts have also followed this test to determine whether government action substantially burdens a person's religious belief. *See Vernon v. City of Los Angeles,* 27 F.3d 1385, 1393 (9th Cir.1994) (the burden must be substantial and an interference with a tenet or belief that is central to the religious doctrine); *Daytona Rescue Mission, Inc. v. City of Daytona Beach,* 885 F.Supp. 1554, 1559–60 (M.D.Fla.1995).

The Eleventh Circuit Court of Appeals rejected a RFRA claim in *Cheffer v. Reno,* 55 F.3d 1517 (11th Cir.1995), because Plaintiffs failed to show the government's actions substantially burdened the free exercise of their religion. Plaintiffs in that case challenged the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248, arguing the Act violated RFRA. In rejecting their claim, the Court observed:

> [A]ppellants do not assert that the exercise of their religion requires them to use physical force and or threats of physical force to prevent abortions ... [A]ppellants do not argue that the exercise of their religion requires them to physically obstruct clinic entrances.... The Access Act leaves ample avenues open for appellants to express their deeply-held belief so long as this expression does not involve physical force, threats of such force, or physical obstruction. Therefore ... the Act does not "substantially burden" the [appellants'] religious practices....

*Id.* at 1522.

As stated earlier, Plaintiffs do not contend that part-time attendance at public school

amounts to a "religious belief" or even a "tenet or belief that is central to [their] religious doctrine." Furthermore, Plaintiffs have failed to provide any evidence that defendants' denial of Annie's desire to attend school part time amounts to being pressured to commit an act forbidden by their religion or prevents them from engaging in conduct that their faith mandates. Plaintiffs have simply failed to establish, by a preponderance of the evidence, the threshold requirements to state a prima facie free exercise claim under RFRA. Defendants are therefore entitled to judgment as a matter of law on Plaintiffs' RFRA claim.

### E. *Governmental Tort Claims Act*

Finally, Plaintiffs have alleged a state claim under Oklahoma's Governmental Tort Claims Act ("Act" or "GTCA"). Defendants contend 1) Plaintiffs only allege defendants' actions violated the Act but the GTCA does not grant any substantive rights; 2) Guthrie School District is the only proper defendant for this claim; and 3) Plaintiffs have failed to prove any entitlement to a part-time education. Plaintiffs failed to respond to defendants' arguments. The Court therefore finds this claim confessed and further finds defendants are entitled to judgment on Plaintiffs' GTCA claim.

### CONCLUSION

Based upon the foregoing, the Court

1) GRANTS defendants' Motion to Dismiss [Docket # 18] which the Court has converted to a motion for summary judgment in its entirety;

2) DENIES Plaintiffs' Motion for Summary Judgment [Docket # 28]; and

3) DEEMS MOOT the Motion for Summary Judgment of the Individual Defendants Based On Qualified Immunity [Docket # 38].

**IT IS SO ORDERED.**