JUSTICE LEAPHART
delivered the Opinion of the Court.
Kathy and Marvin Kaptein (Kapteins) are residents and taxpayers in Conrad, Montana. In October of 1995, the Kapteins filed suit in the Ninth Judicial District Court, Pondera County, asking the court to enter a judgment requiring that the Conrad School District Board of Trustees allow their 7th grade daughter, Tami, to participate in the public school sports programs. Tami was, and is, a student at the Conrad Christian School. The private school in which Tami is enrolled offers ski days and arranges for basketball practices and an intramural game. The Conrad area offers some additional athletic programs which Tami participates in, for example, soccer and softball. In addition, Tami seeks to play on the public school athletic teams for social purposes related to friendship and team camaraderie. Tami participated in the public school girls’ sports program during the 1994-95 school year. This participation was without the approval of the Superintendent or the Board of Trustees. Her participation in the public school program was terminated upon discovery by the Board of Trustees. The Board of Trustees refused to allow Tami to further participate in the public school sports programs since the Board’s policy limited participation to students enrolled full time in public school. The Kapteins contend that the school’s policy is unconstitutional under the provisions of Article X, Section 1 of the Montana Constitution.[1] On November 20, 1995 the District Court issued a preliminary injunction which allowed Tami to play 7th grade volleyball. Subsequently, both parties moved for summary judgment. The District Court upheld the constitutionality of the Board’s policy, granted summary judgment for the Conrad School District and dissolved the preliminary injunction. The Kapteins then sought an injunction pending appeal under Rule 40, Montana Rules of Appellate *155 Procedure, which this Court denied. We affirm the District Court’s grant of summary judgment.
DISCUSSION
The Kapteins based their constitutional argument on Article X, Section 1, of the Montana Constitution, which states:
It is the goal of the people to establish a system of education which will develop the full educational potential of each person. Equality of educational opportunity is guaranteed to each person of the state.
Citing our decision in State, ex rel., Bartmess v. Board of Trustees (1986), 223 Mont. 269, 726 P.2d 801, Kapteins contend that Tami has a constitutionally protected right to participate in public school extracurricular activities and that this Court should apply a middle-tier analysis in balancing Tami’s right to participate against the governmental interests to be served by infringing that right. The School District takes the position that middle-tier analysis is not appropriate in this case and, even if middle-tier analysis were applied, the school’s educational interests in permitting only students enrolled in the school district to participate in school-sponsored extracurricular activities outweighs any right that Tami may have to participate.
Our review of cases from other jurisdictions reveals no decisions, federal or state, which recognize a constitutional right of a nonenrolled student to participate in a public school sports program.
The United States Constitution, unlike the Montana Constitution, does not explicitly or implicitly guarantee a right to education. San Antonio Indep. School Dist. v. Rodriguez (1973), 411 U.S. 1, 35, 93 S.Ct. 1278, 1297-98, 36 L.Ed.2d 16. In keeping with the Rodriguez precedent, the federal courts have applied a rational relationship test to claims that private school students have been unconstitutionally excluded from participating in public school extracurricular activities. In Denis J. O’Connell High School v. Virginia High School League (1978), 581 F.2d 81, a parochial school sought admission to the Virginia High School League which regulates and governs all athletic, literary and debating contests between the public high schools in the state of Virginia. The private school contended that, in restricting membership to public high schools, the League, and thus the state, was violating equal protection. The Fourth Circuit held that, since there was no fundamental right or suspect classification involved, the classification would be subject to the rational relation *156 ship test. Denis J. O’Connell High School, 581 F.2d at 84. The court held that the classification was rationally related to the League’s policy of limiting student transfers to defined geographic areas and of discouraging the recruiting of students for purposes of athletic competition. Since private schools in Virginia suffer no geographic limitation with respect to the areas from which they may draw students, the court held that admission of private schools into the League would undermine that policy. Denis J. O’Connell High School, 581 F.2d at 84-87 Accord Valencia v. Blue Hen Conference (D. Del. 1979), 476 F.Supp. 809, 826 (holding that the public high school association’s exclusion of private schools was supported by legitimate interests in preventing athletic recruiting and maintaining a competitive balance among schools within the association).
We note the following three decisions from foreign jurisdictions which address the question of whether a nonenrolled student has a right under state law to participate in public school courses or extracurricular activities.
In Swanson v. Guthrie Independent School Dist. No. I-1, et al. (D. Okla. 1996), 942 F.Supp. 511, parents who were home schooling their daughter sought permission from the board of education to have their daughter attend the public school on a part-time basis. The board denied the request and adopted a policy that required all students enrolling in the Guthrie Public Schools to do so on a full-time basis. Swanson, 942 F.Supp. at 512. The parents challenged the policy on various grounds including a contention that the policy violated the child’s constitutional right to attend public schools and her right to a free public education under the Oklahoma Constitution which provides constitutional guarantees of a “system of public schools ... open to all of the children of the state” as well as a “system of free public schools wherein all the children of the state may be educated.” Swanson, 942 F.Supp. at 514. The court acknowledged that under Oklahoma law, home schooling is considered an alternative education option. The court concluded, however, that the parents were seeking to “judicially abrogate the equivalency requirement for home schooling and replace it with an absolute right to use public schools to supplement the home school education. [Citation omitted.] This the Court will not do.” Swanson, 942 F.Supp. at 515. In rejecting the parents’ contention that the Oklahoma Constitution gave them the right to choose public school courses on a piecemeal basis, the court said:
Plaintiffs have failed to provide any evidence that defendants have deprived Annie of her right to a free public education. Annie *157 has always been and continues to be entitled to a free public education. Nor have Plaintiffs provided any support for their contention that they may “pick and choose” what courses Annie will take in the public schools. Oklahoma law is clear that the local boards of education have the power to “[m]aintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school district.” Okla.Stat.Ann.tit. 70 § 5- 117(A)(3) (West Supp. 1995-96). The Oklahoma Legislature has also vested the State Board of Education with the authority to determine curricular standards for public schools. See Okla.Stat.Ann.tit. 70 § 11-103.6 (West Supp. 1995-96) (“By February 1,1991, the State Board of Education shall adopt curricular standards for instruction of students in the public schools of this state that are to be implemented not later than the 1993-94 school year.”). In light of existing Oklahoma law, the Court finds Plaintiffs’ reliance on School Board, District No. 18 of Garvin County v. Thompson, 24 Okla. 1, 103 P. 578 (1909) is misplaced. [Footnote omitted.] The Court also declines to adopt Plaintiffs’ strained interpretation of Oklahoma law to create a right to a free part-time public education.
Swanson, 942 F.Supp. at 514.
In Thomas v. Allegany County Board of Education (Md.Ct.Spec.App. 1982), 443 A.2d 622, 626, the appellate court applied heightened scrutiny to the claims of private school students who requested to participate in an all-county music program offered to full-time students enrolled in the public schools. The court applied the “compelling state interest” test to determine whether the board’s rule limiting participation to school district enrollees violated the equal protection clauses of the state or federal constitution. Thomas, 443 A.2d at 626-27. The court utilized the heightened scrutiny test because the private school students claimed that their exclusion infringed upon their freedom of religion under the free exercise clause of the First Amendment. The court concluded that the school district had satisfied the compelling state interest test in view of the “de minimi burden on the appellant’s freedom of religion and the legitimate interest in avoiding administrative inefficiency.” Thomas, 443 A.2d at 626.
Although the administrative impact of a decision mandating the participation of the private students into this public school program appears to us to be trivial, the precedent as it affects the broader spectrum of school administration is of a far more delete *158 rious nature. With the opening of such “Pandora’s box”, there would be no device to preclude, for example, a private school having difficulty securing a qualified chemistry teacher from unilaterally deciding to transport the entire student body to a nearby public school for their chemistry education. The potential for administrative disruption is obvious. Thus, while we may agree that little if any administrative hardship would inure to the Board in permitting these three students to participate in the All-County Band, it is not for this Court to hold that the Board must admit them, in view of the broader implications involved. We think the school administrators and not courts, should decide how much administrative disruption is too much.
Thomas, 443 A.2d at 625-26.
The plaintiffs in Thomas also argued that, since the Maryland Constitution guaranteed “a thorough and efficient System of Free Public Schools ...” that they, as school-age children, were entitled not merely to be admitted to the public schools, but to any part or portion of the public school system which they choose. Thomas, 443 A.2d at 627. The court rejected this contention in view of the unreasonable burden such construction would place on the efficient administration of the public school system. The court recognized that if the legislature or school board wished to permit participation by parochial students, the court saw no impediment but did not think it was for any court to mandate the admission of those students. Thomas, 443 A.2d at 627.
Kapteins cite to the Michigan decision in Snyder v. Charlotte Public School District, Eaton County (Mich. 1984), 365 N.W.2d 151. In Snyder, the Michigan Supreme Court held that a private school student was entitled to enroll in a public grade school band course. In Snyder, the Michigan Supreme Court specifically declined to rule on the basis of constitutional arguments, relying instead upon a 60-year history of such sharing between public and private schools in Michigan and an interpretation of Michigan statutory law which permitted the “sharing” of school programs. Snyder, 365 N.W.2d at 157. In recognition of the potential problem acknowledged by the Maryland court in Thomas, i.e. private school students picking and choosing among various core academic courses, the Michigan court limited its decision to certain nonessential elective courses like band, art and shop. Snyder, 365 N.W.2d at 161-62.
Kapteins suggest that we should decide this case solely upon the basis of Tami’s right to participate in extracurricular activities; that we should not consider any “worse case scenarios,” and that we can, *159 as the Michigan court did, narrowly craft a decision recognizing a right to participate only in certain nonacademic activities such as sports, shop, band and art. Given that Kapteins are asserting a constitutional right to the “full educational potential of each person” under Article X, Section 1, of the Montana Constitution, Tami’s appeal cannot be decided in such a vacuum. If Tami’s right to participate in extracurricular activities outweighs the School District’s interest in limiting participation to enrolled students, then Tami will not be the only nonenrolled person entitled to partake of the public school programs. Home-schoolers, dropouts and adults would have a right equal to that of private school students such as Tami Kaptein to participate in school programs on a part-time or piecemeal basis. Furthermore, as recognized by the Maryland court in the Thomas decision, there would be nothing preventing a private school from unilaterally deciding to transport its entire student body to the public school for purposes of taking an academic course such as computer science. Thomas, 443 A.2d at 626.
Having reviewed some of the relevant decisions from elsewhere around the country, we turn to a discussion of two Montana decisions which address a student’s right to participate in extracurricular activities: Moran v. School District #7 Yellowstone County (D. Mont. 1972), 350 F.Supp. 1180 and State, ex rel., Bartmess v. Board of Trustees (1986), 223 Mont. 269, 726 P.2d 801.
In 1972, the United States District Court for the District of Montana was presented with an issue as to whether a public school could, pursuant to school policy, prohibit a student from participating in extracurricular activities because the student was married. Moran, 350 F.Supp. at 1181-82. Moran argued that, in violation of the equal protection clause, the policy discriminated against married persons without any reasonable basis. The school district argued that the policy was justified as it helped discourage teenage marriages and helped those students who did marry to achieve academic success. Moran, 350 F.Supp. at 1183. The court rejected these rationales, stating:
There is no legislative authority for school board action in the area of matrimony. What married persons do with their time outside of school and how they discharge their matrimonial responsibilities is outside the statutory authority of the school board.
Moran, 350 F.Supp. at 1186. Judge Murray then went on to point out that if encouraging academic success of married students is the stated goal, that goal could be achieved in a nondiscriminatory fashion by *160 tying participation in extracurricular activities to academic performance for all students, not just married students.
Further, a simple requirement that those unable to keep up academic work may not participate in extracurricular activities would have the same effect as limiting married students to academic work if the extra activities are the cause of the academic failure but this of course would be in no way discriminatory. This simple and easy method of ensuring that participation in extracurricular activities by any student is not done at the expense of his academic work dramatizes the prejudicial and invidious effects of the Board’s rule.
Moran, 350 F.Supp. at 1186.
For the above reasons, the federal district court issued a preliminary injunction restraining the board from enforcing its rule excluding married students. Moran, 350 F.Supp. at 1187.
Fourteen years later, the Helena School District adopted the very policy envisioned in Moran. That is, the Helena District integrated academic performance and extracurricular activity when, for purposes of furthering academic achievement, it adopted a policy requiring that no student (regardless of marital status) could participate in extracurricular activities unless he or she maintained a 2.0 grade point average. Bartmess, 726 P.2d at 802. The relators in Bartmess argued that the right to participate in extracurricular activities was a fundamental right and challenged the 2.0 rule as being a denial of equal protection and equal educational opportunity. Bartmess, 726 P.2d at 802. Without addressing the question of whether education itself is a fundamental right, we held that participation in extracurricular activities was not a fundamental right; that the claim warranted a middle-tier analysis and that the 2.0 rule did not violate either the equal protection clause or the equal educational opportunity clause found in Article X, Section 1, of the Montana Constitution. Bartmess, 726 P.2d at 804-805.
We determine that Kapteins’ claim of a right to participate, like the relators in Bartmess, must be analyzed under a middle-tier analysis. We recognized in Bartmess that a student’s right to participate in extracurricular activities, although not a fundamental right, is “clearly subject to constitutional protection.” Bartmess, 726 P.2d at 805. Under a middle-tier analysis there must be a “balancing of the rights infringed and the governmental interest to be served by such infringement.” Butte Community Union v. Lewis (1986), 219 Mont. 426, 434, 712 P.2d 1309, 1314. Thus, in the present context, the right to participate must be balanced against the School District’s interests *161 in restricting participation to students enrolled in the public school system. Consistent with the middle-tier analysis conducted in Bart-mess, we must first determine whether the classification based upon enrolled students is reasonable. We then examine whether the governmental interest in making this classification based upon enrollment is more important than Tami Kaptein’s interest in participating in existing extracurricular activities.
As to the “reasonableness” of classifying students based upon whether they are enrolled in the public school system, we note that Article X of the Montana Constitution places a heavy emphasis on the concept of an educational “system.” Article X, Section 1(1), states that it is the goal of the people to “establish a system of education which will develop the full educational potential of each person.” Article X, Section 1(3), provides: “The legislature shall provide a basic system of free quality public elementary and secondary schools.” Article X, Section 9(1), creates a state board of education responsible for planning and evaluating programs for the state’s “educational systems.”
Article X, Section 9(3), creates a board of public education “to exercise general supervision over the public school system....” Given this heavy emphasis on the creation, supervision and quality of the state’s educational “system,” we hold that the School District’s classification of students based upon whether they are enrolled in the public school “system” is entirely reasonable.
We must then examine the School District’s interest in making this classification and weigh that interest against Tami Kaptein’s interest in participating.
The School District has set forth an extensive list of “educational reasons” for its policy of restricting participation to enrolled students. We will not delve into the particulars of that list other than to note that the primary “educational reason” propounded by the School District is that of providing a unified program in which required academic courses, elective courses and extracurricular activities are “integrated” so as to complement each other. The Board takes the position that the integrating of the academic and extracurricular activities does not lend itself to participation by nonenrolled students. This rationale finds ample support in our decision in Bartmess. In Bartmess, Helena School District No. 1 chose to adopt a policy whereby students in the system needed to maintain a 2.0 or “C” grade average for the preceding nine weeks in order to participate in extracurricular activities. The 2.0 standard was a higher standard *162 than the 1.0 average needed to graduate from high school and was not based upon any scientific or statistical studies showing academic improvement as a result of such a policy. Bartmess, 726 P.2d at 802. Although the label “integrating” was not used to characterize the policy in Bartmess, the Helena School District was, in effect, “integrating” the athletic/extra-curricular program with the academic program. That is, the Helena School District made a policy decision that participation in extracurricular activities was tied to academic performance. In upholding this integrated approach, we stated:
We are not able to conclude, as the relators urge, that an opportunity to participate in extracurricular activities is more important than the achievement of average academic performance. We conclude that the government interests in developing the full educational potential of each person and providing a basic system of quality public education by the enactment of the 2.0 rule outweigh the students’ interest in participating in existing extracurricular activities.
Bartmess, 726 P.2d at 805.
In the present case, we are likewise unable to conclude that a private school student’s interest in participating in extracurricular activities is more important than the School District’s policy decision that, in order to effectively integrate academics and extracurricular activities, it needs to restrict participation to those students who are enrolled in the public school system.
Accordingly, we affirm the decision of the District Court.
CHIEF JUSTICE TURNAGE, JUSTICES NELSON and TRIEWEILER concur.

. Although Kapteins’ brief contains considerable discussion of their status as taxpayers, they ultimately concede that their daughter either has a constitutional right to participate in extracurricular activities under Article X, Section 1, of the Montana Constitution or she does not, regardless of her parents’ status as taxpayers. Thus we do not treat taxpayer status as relevant to the resolution of this appeal.