No. 01-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 163

OPINION AND ORDER

DONNY RAY GEORGE,

Petitioner,

v

MONTANA BOARD OF PARDONS, et al.,

Respondents.

¶1 Donny Ray George, petitioner herein, seeks a writ of habeas corpus. Petitioner pled guilty to two counts of sexual intercourse without consent in the Twentieth Judicial District Court, Lake County. On September 22, 1999, the District Court sentenced him to ten years with two years suspended in Cause No. DC-99-10 and to ten years, all suspended, in Cause No. DC-99-18. The court ordered the sentences to run consecutively.

¶2 George seeks a wide range of relief in his petition for writ of habeas corpus. The petitioner attacks the validity of his conviction based upon ineffective assistance of counsel and lack of jurisdiction. He further contends that he was not mentally able to assist in his own defense. Such claims, although they may be proper allegations in a petition for post-conviction relief, are not the proper subject matter in a habeas proceeding. *Rudolph v. Day* (1995), 273 Mont. 309, 311, 902 P.2d 1007, 1008. At this juncture, however, even if we were to consider petitioner's pleading as a petition for post-conviction relief, such claims would be time-barred. Section 46-21-102, MCA.

¶3 The petitioner also seeks relief for a variety of problems related to the conditions of his confinement, including inmate legal assistance, alleged confiscation of his legal work, and receiving and sending legal mail. He further claims to have been the victim of an assault

from another inmate. These allegations, even if they were true, do not affect the petitioner's legal incarceration. The only purpose of a habeas proceeding is to "inquire into the cause of imprisonment or restraint and, if illegal, to be delivered from the imprisonment or restraint." Section 46-22-101, MCA. *See also Gates v. Missoula County Commissioners* (1988), 235 Mont. 261, 766 P.2d 884.

¶4 The Board of Pardons and Parole conducted petitioner's initial parole hearing on November 29, 2000. The Board denied parole, scheduling petitioner for a progress review in November 2002. The petitioner's remaining allegations concern his recent parole hearing. The petitioner contends he was denied due process because 1) he did not receive an adequate advance notice of his parole hearing; 2) the Board failed to adequately "deliberate" before issuing its decision; 3) the Board's decision was made by a two member majority and not the "full" Board; and 4) he was entitled to have a particular member of the Board who is knowledgeable in Indian issues participate in his parole decision. He further contends that the Board lacked authority to impose sex offender treatment as a condition to parole.

¶5 Since petitioner committed his offenses after 1989, he has no liberty interest in parole. *McDermott v. MacDonald*, 2001 MT 89, ¶ 8, 305 Mont. 166, ¶ 8, 24 P.3d 200, ¶8. Due process in the context of an inmate seeking parole includes at a minimum "an opportunity to be heard and a written statement explaining why he was denied parole." *McDermott,* ¶ 11 (citing *Greenholtz v. Inmates of the Nebraska Penal and Correction Complex* (1979), 442 U.S. 1, 16, 99 S.Ct. 2100, 2108, 60 L.Ed.2d 668). We conclude that the petitioner was provided both an opportunity to be heard and a written statement with reasons for his parole denial.

¶6 The petitioner complains that he did not receive adequate notice of his hearing. We note, however, that petitioner received advance notice of his hearing on October 26, 2000, and he was physically present during the hearing. He contends that the fact that he received a denial slip before he even left the hearing room establishes that the decision was made in advance, prior to the hearing. We conclude that neither of these claims have merit. We are not aware of any due process requirement that requires the Board to deliberate for a specific length of time before issuing its decision. It also is apparent that petitioner was made aware of his upcoming parole hearing and did attend in person.

¶7 The petitioner also complains that he did not appear before a "full board." We note that the hearing was conducted before a Board composed of three members. Whenever a

regular Board member is unable to attend a meeting, an auxiliary member sits in the regular Board member's place. Section 2-15-2302(3), MCA. At the hearing in question were two regular Board members and one auxiliary member. We further note that the decision was made by a majority vote of the Board.

¶8 The petitioner argues that he received nothing more than a "boiler plate" denial. Here we conclude that the Case Disposition Form used by the Board was adequate and comports with due process.

¶9 The petitioner contends that the Parole Board was without authority to require him to attend Sex Offender Program II. It is true that the Board remarked that he "may request a reappearance upon completion of SOP." We interpret this to mean that the Board will review George's progress in November 2002, but if he completes SOP before that date, he may request the Board to review his progress prior to November 2002. We have held that the Board has broad discretion and authority to make such recommendations to inmates seeking to improve their chances for parole. *McDermott,* ¶ 15.

¶10 Finally, the petitioner contends that he was entitled to have Roxanne Wilson, a board member knowledgeable in "Indian culture and problems," participate in his parole review. The State initially simply responded that George cited no authority in support of this argument. On June 21, 2001, we ordered the State to file a more detailed response to this contention. On July 20, 2001, the State filed a supplemental response, observing that pursuant to § 2-15-2302, MCA, at least one member of the Board must have particular knowledge of "Indian culture and problems." However, the State maintains that this particular Board member can be appointed as an auxiliary member and, as such, only attends those meetings in which a regular board member is unable to attend. *See* § 2-3-2302(3), MCA. The State contends that, pursuant to a plain reading of these provisions, Native American applicants are not entitled to have the particular Board member possessing knowledge of "Indian culture and problems" hear and act on their parole applications. The State argues that, had the legislature intended otherwise, it could have directly stated so, or at least required that the Board member with knowledge of Native American affairs be appointed as a regular board member.

¶11 The relevant statutory provisions governing the composition of the Board are as follows: "The board consists of three members and two auxiliary members, at least one of whom must have particular knowledge of Indian culture and problems." Section 2-15-2302 (2), MCA. "An auxiliary member shall attend any meeting that a regular board member is

unable to attend, and at that time, the auxiliary member has all the rights and responsibilities of a regular board member." Section 2-15-2302(3), MCA.

¶12 We are mindful of our role "simply to ascertain and declare what is in terms or in substance contained [in a statute], not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. We agree with the State that the terms of the relevant statutory provisions, at least at first blush, do not appear to require that the one Board member with knowledge of Native American affairs participate in hearings and decisions regarding the parole applications of Native Americans. However, we think the substance of the statute does require such participation. We can think of no other plausible

reason for requiring a Board member to have knowledge of Native American affairs other than for that Board member to hear and act on the applications of Native Americans, nor has the State offered us any such reason. Furthermore, we note that prior to the amendment of this statute to provide for auxiliary board members, the statute did require that one of the regular board members have knowledge of Native American affairs. *Compare* § 2-15-2302, MCA (1978) ("The board consists of three members at least one of whom shall have particular knowledge of Indian culture and problems."), *with* § 2-15-2302, MCA (1979) ("The board consists of three members *and an auxiliary member,* at least one of whom shall have particular knowledge of Indian culture and problems." (Emphasis added.)). We can only conclude that when the legislature provided for auxiliary board members, it failed to specify that the member with knowledge of Native American affairs participate in parole decisions involving Native American applicants. Therefore, for the reasons above stated,

¶13 IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is GRANTED in part and DENIED in part.

¶14 IT IS SPECIFICALLY ORDERED that George's application for parole be remanded to the Board for de novo review with the full participation of the Board member with "particular knowledge of Indian culture and problems." In all other respects, the petition for writ of habeas corpus is DENIED.

¶15 The Clerk of Court is directed to mail a copy of this Order to Donny Ray George, personally, the Attoney General, and the Department of Corrections.

¶16 DATED this 14th day of August, 2001.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

Justice Jim Rice dissenting.

¶17 I respectfully dissent from the portion of Court's order granting the petition, and concur in the remainder.

¶18 By holding that the Parole Board member who is knowledgeable in Native American culture is required to sit on all Native American parole applications, the Court is yielding to the temptation to legislate an amendment to § 2-15-2302, MCA. While the concept may be meritorious, it is clearly not required by the plain meaning of the statute.

¶19 The Court's statement that "[w]e can only conclude that when the legislature provided for auxiliary board members, it failed to specify that the member with knowledge of Native American affairs participate in parole decisions involving Native American applicants," is flawed for two reasons. First, the Legislature did not overlook or "fail to specify" this requirement when it added auxiliary members, because there was no such requirement under the former law. Like the current statute, the earlier version simply did not mandate that the Native American-knowledgeable member sit on all Native American applications. Further, § 2-15-124(8), MCA, authorized the Board, as a quasi-judicial body, to make decisions by any two of its members. Board decisions have thus been rendered by any two of its members under the former and current versions of the statute, without any legislative intervention to change that practice. The Court's decision herein will now restrict the general application of § 2-15-124(8), MCA, to the Board.

¶20 Secondly, even if the Legislature had erroneously "failed to specify" this requirement when it amended the law, it is not the province of this Court to fix the error. "[T]o the extent that there is an error and to the extent that the statute does not accurately reflect the Legislature's clearly expressed intention, it is appropriate that the Legislature correct the problem, not the courts." *State v. Goebel*, 2001 MT 73, ¶23, 305 Mont. 53, 61.

¶21 The Court states that "[w]e can think of no other plausible reason for that Board member to have knowledge of Native American affairs other than for that Board member to hear and act on the applications of Native Americans. . ." The error here is that the Court need not determine a plausible reason for the Legislature's action in order to enforce the statute's plain meaning. When the language of the statute is clear, the Court need not consider the history or purpose of the provision:

> The intention of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute be so determined, the courts may not go further and apply any other means of interpretation. Where. . .the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. . .There is simply no reason for the use of legislative history to construe a statute where the language is clear and unambiguous on its face.

*Goebel*, *supra, at 59, citing State v. Hubbard (1982), 200 Mont. 106, 649 P.2d 1331. A reading of the statute at issue here reveals clearly that the Legislature did not require the Native American-knowledgeable member to sit on all Native American parole applications. There is no need, then, to render an interpretation of the statute based upon its plausible rationale or history.*

¶22 The Court has improperly extrapolated the *composition* of a public body into a *limitation* on its authorization to act. Montana has numerous boards and commissions whose unique compositions are established by statute. Section 2-15-1505, MCA, requires one member of the Board of Regents to be a university student, but does not require that the student member participate in all matters before the Board generated by students. Section 2-15-1841, MCA, provides that the Board of Medical Examiners is composed of representatives of specific medical professions, but does not require the member which represents the same profession as the party before the board to participate in that decision. The Transportation Commission is composed of members from various districts of the state, and at least one member "must have specific knowledge of Indian culture and tribal transportation needs." Section 2-15-2502, MCA. Again, the statute does not require the Native American-knowledgeable member of the Transportation Commission to participate in decisions that involve Native Americans or the tribes. Other such examples abound.

¶23 In contrast, when the Legislature wants a board's particular composition to constrain that board's Decision making process, it makes specific provision to do so. See § 2-15-1705, MCA (requiring that a substitute member with identical qualifications sit for an

absent member on the Board of Personnel Appeals).

¶24 The idea behind the Court's action today is, without a doubt, appealing. However, I believe it imprudent to entertain interpretations which overreach the plain meaning of the statute. I would deny the petition.

/S/ JIM RICE

Chief Justice Karla M. Gray joins in the dissent of Justice Rice.

/S/ KARLA M. GRAY