JUSTICE NELSON
dissents:
*105 ¶56 I join Justice Leaphart’s dissenting opinion and add the following.
¶57 Underlying the majority’s opinion is the pragmatic acknowledgment that Montana has no statutory scheme for dealing with interscholastic sports, rules and rules infractions, or for the protection of the due process and appeal rights of student athletes. The MHSA exists because of a complete void in Montana law. As Justice Leaphart points out, local school boards have, actually or effectively, unlawfully delegated to the MHSA certain of their important constitutional and statutory duties and authority over students and students’ sporting activities because there is no alternative statutory scheme. Our opinion recognizes this as fact. As the majority candidly concede, “[i]nterscholastic competition would simply not exist unless some independent entity serves as a neutral arbiter to establish and monitor eligibility rules and the ground rules for play.”
¶58 However, to suggest, as do the Respondents and Amici and as does the Court, that membership in the MHSA, being “voluntary,” a school or school district has a viable option to withdraw from the organization, is preposterous. The fact is that a school district either plays ball with the MHSA or it doesn’t play at all-literally. It will be the rare board of trustees that pulls out of the MHSA and, in so doing, forfeits the opportunity for local students to participate in interscholastic sports and the chance for some to win scholarships, along with the substantial revenue, support and entertainment that such sporting events and tournaments provide to the community.
¶59 The bottom line is that the MHSA, like the elephant in the room, is as much a part of Montana’s state and local school structure and operations as are the students, the teachers, the administration, the classes, and the extra-curricular activities.
¶60 Yet, despite this pivotal role in Montana’s educational landscape, the MHSA exists and functions totally without legislative authorization, regulation or oversight. Indeed, the MHSA-whose raison d’etre is regulating interscholastic sports, sporting events and student athletes-is accountable to no State office, to no State agency, to no State officer and to no State elected official. Although the Governor and Superintendent of Public Instruction-concededly without any statutory authority-appoint members to MHSA’s Board of Control, these, among the highest of Montana’s elected executive-branch officers, have no official say in what the .MHSA does or how it goes about doing it.
¶61 All of that said, this is not really a criticism of the MHSA. It is a corollary to the rule “if you build it they will come” that “if you don’t build it, someone else will.” The MHSA exists because Montana has no *106 laws to govern and regulate the interscholastic sporting activities of Montana’s students. Quite simply, in default of a comprehensive set of laws, a private organization-the MHSA-filled the breach.
¶62 My only reason for stating the obvious, is that, under Article X, Section 1 of Montana’s Constitution, it is the State’s responsibility to provide a basic system of free quality public elementary and secondary schools and equal educational opportunity to each person. Arguendo, participation in interscholastic sports is part of that constitutionally-protected educational opportunity-at least we have tacitly so held. See State ex rel. Bartmess v. Board of Trustees (1986), 223 Mont. 269, 726 P.2d 801; Kaptein v. Conrad Sch. Dist. (1997), 281 Mont. 152, 931 P.2d 1311. It follows, then, that it is the State’s obligation to enact laws that will fairly and efficiently govern, regulate and protect student athletes’ rights to participate in this aspect of their education. Under Article X, Section 1, the Legislature has an affirmative duty to legislate in this area. Its constitutional obligation cannot, by inaction, be foisted off onto a private organization. Yet, that is exactly what has happened.
¶63 In the case at bar, we are dealing with the complete abrogation by the State of its responsibility to enact laws regulating publicly funded interscholastic sporting activities, sponsored by taxpayer financed schools, played in taxpayer financed facilities, all governed by publicly elected school district trustees. More to the point, this case involves the complete abrogation by the State of its responsibility to enact a statutory hearing and appeals process to protect student athletes who have constitutional rights to participate in extra-curricular, interscholastic sporting activities.
¶64 As the majority point out, in the context of infractions of and enforcement of MHSA’s eligibility rules, there is no law except that which MHSA makes for itself. And, short of resort to the courts, there is no hearings or appeals process to protect student athletes’ constitutional rights of participation except that which the MHSA chooses to provide.[1] The statutes that do exist-§§ 20-5-201(3), MCA and 20-3-210, MCA-do not work. Even assuming one could pound the round peg of the student athlete into the square hole of the existing law, the process is too slow and too cumbersome.
¶65 Unfortunately, since the existing statutory procedure is worthless, these sorts of cases, with some non-substantial deviations, ultimately require students and their parents to hire counsel and sue for temporary or preliminary injunctive relief in district courts when the *107 student is deprived of his or her actual or perceived right to participate in an interscholastic sporting activity. Typically injunctive relief is granted (if not by the trial court, by this Court) so the student can play-eligible or not. By the time the legal proceedings have finally run their course, the student has graduated (or, at least, has finished the season), and about all that is left is for this Court to engage in the essentially meaningless task of affirming or reversing the trial court, or deciding not to decide the case at all. See J.M. v. Montana High Sch. Ass’n (1994), 265 Mont. 230, 875 P.2d 1026; M.H. v. Montana High Sch. Ass’n (1996), 280 Mont. 123, 929 P.2d 239; Grabow v. Montana High Sch. Ass’n, 2000 MT 159, 300 Mont. 227, 3 P.3d 650.
¶66 The long and short of it is that instead of a comprehensive and workable statutory and administrative scheme to govern interscholastic sports, sporting activities and student athletes-including an efficient hearing and appeals procedure-we have an ad hoc process that (a) forces students and their parents into time consuming litigation; (b) insures that the student will play under court order whether or not he or she is actually eligible; (c) costs the student’s parents, and (through their membership dues in the MHSA) school districts, scarce funds that could and should otherwise be spent on education; (d) ultimately produces a meaningless result; and (e) turns the courts into little more than enablers of the whole dysfunctional system.
¶67 I can understand why the majority chose the course it did. To do otherwise would undo interscholastic sports-and, thus, life-as we know it. I cannot join our decision, however. As Justice Leaphart states, the legal underpinning for the majority opinion is a fiction. We are merely giving chicken soup to a corpse.
¶68 The Legislature is obligated to fix this mess, not the courts. I would provide the proper branch of government the opportunity to do so.
¶69 I dissent.

 Which, at least in this case, went forward at Grabow’s personal expense.